1  JOSEPH S. LEVENTHAL (SBN 221043)
2  joseph.leventhal@dinsmore.com
   DINSMORE & SHOHL LLP
3  655 West Broadway, Suite 800
4  San Diego, California 92101
   Ph:  619-400-0500
5  Fx:  619-400-0501

6  Counsel for Applicant/Defendant
7  ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V.

8
9              **UNITED STATES DISTRICT COURT**
10            **SOUTHERN DISTRICT OF CALIFORNIA**

11 | ALXIGNA INC. and MPREZAS, INC., | Civil Action No.  **'23 CV 1584 BTM WVG**
12 |     Opposers/Plaintiffs,        | Trademark Trial and Appeal Board
13 |                                 | Proceeding No: 91235782
   |     v.                          |
14 |                                 | **MISCELLANEOUS ACTION:**
15 | ARMSTRONG LABORATORIOS DE       | **MEMORANDUM OF POINTS AND**
   | MEXICO S.A. DE C.V.,            | **AUTHORITIES IN SUPPORT OF**
16 |                                 | **MOTION OF ARMSTRONG**
17 |     Applicant/Defendant.        | **LABORATORIOS DE MEXICO S.A.**
   |                                 | **DE C.V. TO COMPEL COMPLIANCE**
18 |                                 | **WITH SUBPOENAS**
19 |                                 |
20 |                                 | Date: TBD
   |                                 | Time: TBD
21 |                                 | Place: TBD

22
23
24
25
26
27
28

                                    i

1

## **TABLE OF CONTENTS**

2  TABLE OF CONTENTS............................................................................ ii

3  TABLE OF AUTHORITIES .................................................................... iii

4  I.  BACKGROUND ..............................................................................1

5       A.  Armstrong Moves to Compel OPMX's Compliance In Spite of
6            OPMX's Objections  .........................................................................3

7       B.  Armstrong Moves to Compel Bedoy, Who Failed to Serve Timely
          Objections or Timely Move to Quash..................................................5

8  II.  DESPITE ARMSTRONG'S EFFORTS, THE THIRD-PARTIES HAVE
9  REFUSED TO MEANINGFULLY MEET AND CONFER REGARDING
10  THE SUBPOENAS .............................................................................8

11  III.  APPLICABLE LEGAL STANDARD .................................................9

12  IV.  THE LIMITED DISCOVERY ARMSTRONG SEEKS FROM OPMX AND
BEDOY IS RELEVANT TO THE UNDERLYING ACTION ...................11

13       A.  OPMX's Boilerplate Objections Did Not Satisfy its Duty to Comply
14            with the Subpoenas .........................................................................12

15       B.  Bedoy's Failure to Even Object Justifies an Order to Comply..........16

16  IV.  CONCLUSION .............................................................................17

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE
MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*BNSF Ry. Co. v. Alere, Inc.*,

4
　　2018 U.S. Dist. LEXIS 83559 (S.D. Cal. May 17, 2018)....................................13

5

*Broiler Chicken Antitrust Litig.*,
　　2017 U.S. Dist. LEXIS 124459 (N.D. Ill. Aug. 7, 2017)....................................11

6

*Bonzani v. Shinseki*,

7
　　2014 U.S. Dist. LEXIS 77619 (E.D. Cal. June 4, 2014)....................................14

8

*Chambers v. Whirlpool Corp.*,

9
　　2016 U.S. Dist. LEXIS 193644 (C.D. Cal. Aug. 12, 2016)................................13

10

*Forbes v. Villa*,
　　2013 U.S. Dist. LEXIS 199481 (C.D. Cal. Dec. 3, 2013) ................................14

11

*Friedman v. Old Republic Home Protection Co., Inc.*,

12
　　2014 U.S. Dist. LEXIS 200887 (C.D. Cal. June 24, 2014) ..........................13, 16

13

*Garrett v. City & County of San Francisco*,

14
　　818 F.2d 1515 (9th Cir. 1987)............................................................................10

15

*Greenspan v. County of San Diego*,
　　2014 U.S. Dist. LEXIS 7393 (S.D. Cal. Jan. 9, 2014)......................................10

16

*Handloser v. HCL America, Inc.*,

17
　　2020 U.S. Dist. LEXIS 145960, 2020 WL 4700989 (N.D. Cal. Aug. 13, 2020) 16

18

*Hi.Q, Inc. v. Zeetogroup, LLC*,

19
　　2022 U.S. Dist. LEXIS 215133 (S.D. Cal. Nov. 29, 2022) ..........................13, 15

20

*Highbeam Mktg., LLC v. Highbeam Research, LLC*,
　　2008 TTAB LEXIS 2 (TTAB 2008)............................................................10, 14

21

*Jang v. Sagicor Life Ins. Co.*,

22
　　2019 U.S. Dist. LEXIS 42737 (C.D. Cal. Jan. 25, 2019) ..................................16

23

*Jarritos, Inc. v. Mprezas Inc.*,

24
　　Proceeding No. 91273390 ..............................................................................2, 12

25

*RetailMeNot, Inc. v. Honey Sci. Corp.* (*In re Subpoena to PayPal Holdings, Inc.*),
　　2020 U.S. Dist. LEXIS 102530 (N.D. Cal. June 10, 2020) ...............................15

26

*Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*,

27
　　2018 U.S. Dist. LEXIS 88523 (S.D. Cal. May 24, 2018)..................................13

28

iii

*Thornton v. State Farm Mutual Auto Ins. Co.*,
    2006 U.S. Dist. LEXIS 87845 (N.D. Ohio 2006).. ................................................12

*Toni Brattin & Co. v. Mosaic Int'l, LLC*,
    2015 U.S. Dist. LEXIS 46756 (N.D. Cal. Apr. 9, 2015) ....................................10

*Union Bank of California 401(k) Plan v. Hansen (In re Coan)*,
    2007 U.S. Dist. LEXIS 6288 (N.D. Cal. Jan. 12, 2007) ...................10, 13, 15, 16

*Walrus Brands, LLC v. Peaches Uniforms, Inc.*,
    2018 U.S. Dist. LEXIS 247617 (N.D. Ill. Apr. 23, 2018) ..................................11

## **Statutes**

Fed. R. Civ. P. 34 ...................................................................................................10

Fed. R. Civ. P. 45 .......................................................................................10, 15, 16

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

# I. BACKGROUND

Armstrong is the owner of two trademark registrations for HERKLIN for "*Lice treatment preparations and products.*" Declaration of Joseph S. Leventhal in Support of Motion to Compel (hereafter "Leventhal Decl."), ¶ 3, Exs. B-C. Armstrong also owns a trademark application for its HERKLIN trademark for "*Lice treatment combs.*" *Id.*, Ex. D.

On July 26, 2017, Alxigna, OPMX LLC's ("OPMX") purported successor-in-interest, and then-owner of the HAIRKLYN mark, filed a notice of opposition to Armstrong's application for the HERKLIN mark for "*Lice treatment combs*," U.S. Serial No. 87233512 (the "'512 Application"), with the TTAB. The Underlying Action is captioned *Alxigna Inc. and Mprezas Inc. v. Armstrong Laboratorios de Mexico S.A. de C.V.*, Proceeding No. 91235782. Although Armstrong owns trademark registrations for the HERKLIN word and design mark and the HERKLIN standard character mark, both for "*Lice treatment preparation and products*" and both citing a date of first use anywhere *at least July 31, 1979* (Leventhal Decl., ¶ 3, Exs. B-D), Alxigna asserted a likelihood of confusion between the HAIRKLYN mark and the HERKLIN mark as described in the '512 Application and claimed to be the senior user. *See* Leventhal Decl., ¶ 2, Ex. A. In response, Armstrong counterclaimed to cancel the HAIRKLYN registration based on evidence that OPMX and its purported successors had fraudulently offered products in the United States to misrepresent the source of the products and trade off of Armstrong's well-known mark by targeting U.S. consumers familiar with the HERKLIN brand, including consumers of Mexican descent. *See id.*

The Underlying Action involves a purposely-created convoluted web of third-parties and family business connections. *See* Leventhal Decl. ¶¶ 6-7, Exs. G-H. In fact, in the midst of its opposition, Alxigna, which was owned by Octavio Fernando Garces Cazadero ("Cazadero"), purportedly assigned its ownership of the HAIRKLYN mark to Mprezas, which is owned and operated by Martha Nancy Hernandez ("Hernandez").

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE
MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

*See id.* The TTAB itself has had to work to untangle this web, *sua sponte* substituting Mprezas for Alxigna as party-plaintiff on August 24, 2020, only to add back Alxigna as an opposer on June 2, 2023 when Opposers' discovery gamesmanship and the relatedness of the parties, their working in concert, and their common legal counsel became clear to the TTAB. *See* Leventhal Decl. ¶ 10, Ex. L.

OPMX, which, upon information and belief, is operated by Fernando Andres Garces Andrade ("Andrade"), the son of Hernandez and Cazadero, and Fernando Eduardo Bedoy Garces ("Bedoy"), the son of Cazadero, is a company that claims it "fulfills the demand of Mexican people who live in the United States and who dream with their 'grandmother's home remedies.'" Leventhal Decl., ¶ 5, Ex. F. OPMX has claimed responsibility "for distributing these Hispanic products to an important segment, with a fast expansion and great necessity of modern distribution." *See id.* OPMX has largely fulfilled the demand of "Mexican people" and distributed "Hispanic products" by misappropriating well-known Mexican brands. Indeed, Armstrong is not the only company to challenge OPMX and Opposers based on their use of well-known Mexican brands. *See e.g.*, *Jarritos, Inc. v. Mprezas Inc.*, Proceeding No. 91273390, Filed December 10, 2021 (TTAB) (Jarritos, Inc., owner of JARRITOS mark for soft drinks, challenging Mprezas' registration of FRUTA-RITTOS mark for soft drinks); *see generally*, Leventhal Decl., ¶ 8, Exs. I & J (explaining Jarritos, Inc. was founded in 1950 and became a best-selling drink in Mexico in the 1960s, before being exported to the United States in the 1980s).

Although OPMX purportedly transferred its ownership of the HAIRKLYN mark to Alxigna, it is clear, through Mprezas' disclosures and discovery responses, that OPMX remains heavily involved in manufacturing and distribution of the HAIRKLYN product and in maintenance of the HAIRKLYN filing. Thus, it is evident that OPMX has discoverable information. After repeatedly attempting to conduct discovery on Alxigna and Mprezas, Armstrong has come to learn that OPMX never fully

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

relinquished involvement with the HAIRKLYN mark. *See, e.g.*, Leventhal Decl., ¶ 9, Ex. K (explaining that Mprezas' discovery responses revealed that OPMX distributes products under the HAIRKLYN mark as a current licensee). Indeed, Alxigna, Mprezas, and OPMX, all owned and run by members of one family, have overlapped in their responsibilities for HAIRKLYN products as well as products under other brands with roots in Mexican companies that are likely familiar to consumers of Mexican decent or who otherwise have Latin-American heritage. Further, the TTAB concluded in a June 2, 2023 order that third-party discovery from OPMX is not only relevant, but it is discoverable. *See* Leventhal Decl., ¶ 10, Ex. L. Despite having clearly discoverable information, OPMX lodged improper objections to its Subpoena to Testify in a Civil Action ("OPMX Deposition Subpoena") and its Subpoena to Produce Documents, Information and Objects in a Civil Action ("OPMX Production Subpoena") (collectively, the "OPMX Subpoenas"). Rather than filing any motion to quash in this Court, OPMX has instead simply refused to comply in an improper attempt to avoid compliance with the OPMX Subpoenas.

On June 28, 2023, Armstrong provided notice of the OPMX Subpoenas to Opposers through their counsel. *See* Leventhal Decl., ¶ 11, Ex. N. On June 30, 2023, the OPMX Subpoenas were served on OPMX by process server through its corporate agent in Delaware. *See* Leventhal Decl., ¶ 13, Ex. O. On August 3, 2023, the OPMX Subpoenas were again served on OPMX by process server at the address listed with the California Secretary of State. *See* Leventhal Decl., ¶ 13, Ex. P. Notably, Opposers' counsel also represents OPMX. Thus, the OPMX Subpoenas were properly served on its Delaware agent, at its California address, and on its counsel.

## A. Armstrong Moves to Compel OPMX's Compliance In Spite of OPMX's Objections.

Armstrong requests that the Court order OPMX to provide deposition testimony and requested documents that directly bear on the claims and defenses in the

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

Underlying Action. Armstrong served two subpoenas seeking this information and OPMX responded with a refusal to comply in any way and boilerplate objections not tailored to the requests. *See* Leventhal Decl., ¶¶ 11-15, Exs. M-R. OPMX, without actually filing a motion to quash, improperly purported to reserve its right to file a motion to quash in this Court. *See* Leventhal Decl., ¶ 15, Ex. R.

OPMX's justification for delaying and/or refusing compliance is simply inadequate for at least two reasons. **<u>First</u>**, OPMX had a duty to comply with the Deposition Subpoena absent a motion to quash. OPMX never filed a motion to quash. **<u>Second</u>**, OPMX had a duty to comply with the OPMX Production Subpoena unless engaged in good-faith negotiations over its compliance. OPMX never engaged in good faith negotiations. Despite Armstrong's communications with OPMX over the course of several weeks and Armstrong's repeated offers to meet-and-confer, OPMX refused to comply or even discuss terms of its compliance forcing Armstrong to seek the Court's intervention. *See* Leventhal Decl., ¶¶ 18-19, Exs. V-W.

Specifically, this motion concerns OPMX's failure to produce documents or testify as the original owner and registrant for the HAIRKLYN mark, which is in question in the Underlying Action. OPMX is the original owner of the HAIRKLYN mark registration, U.S. Reg. No. 4,241,962, and the mark was then purportedly assigned to Opposers Alxigna and Mprezas in turn. *See* Leventhal Decl., ¶¶ 4, 6-7, Exs. E, G-H. Through discovery as well as recent depositions of Opposers, it has become increasingly clear that OPMX possesses unique knowledge and documents about the mark in question. Not only is OPMX in a unique position to provide discoverable information on the origin of the mark from at least 2012, when it filed its application, until 2015, when the first assignment was executed, but the Opposers allege OPMX has remained a key supplier of products bearing the HAIRKLYN mark to this day. *See* Leventhal Decl., ¶ 9, Ex. K.

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

1    Because Opposers assert that Armstrong's HERKLIN mark application, U.S.
2    Serial No. 87233512, is likely to cause confusion while Armstrong counters that
3    Opposers intentionally registered the HAIRKLYN mark to trade off the goodwill of
4    Armstrong's well-known mark originating in Mexico, understanding the circumstances
5    of creation of the HAIRKLYN mark is discoverable. Further, although OPMX
6    purportedly assigned the HAIRKLYN trademark to Alxigna and Alxigna then
7    purportedly assigned the trademark to Mprezas, OPMX has remained a licensee of the
8    mark. *See id.* Armstrong sought information regarding creation of the HAIRKLYN
9    mark and information about distribution of the products in discovery; however, the
10   Opposers have not produced the requested information; therefore, the Court should
11   order OPMX to comply with the OPMX Subpoenas.
12   / / /
13   / / /
14   / / /

15   **B. Armstrong Moves to Compel Bedoy, Who Failed to Serve Timely**
16   **Objections or Timely Move to Quash.**

17   On Friday, July 28, 2023, Saturday, July 29, 2023, and Monday, July 31, 2023,
18   Armstrong deposed Hernandez and Cazadero in their individual capacities and as the
19   designated Rule 30(b)(6) representatives of Opposers Mprezas and Alxigna,
20   respectively (collectively, the "Opposers' Depositions"). *See* Leventhal Decl. ¶ 16.
21   During the course of the Opposers' Depositions, Armstrong learned that Hernandez
22   and Cazadero had a son together named "Fernando Garces" and Octavio had another
23   son also named "Fernando Garces."[1] *See* Leventhal Decl. ¶¶ 16-17. The full names of

24   _____

25   [1] Although Opposers' counsel designated the entirety of Alxigna's corporate deposition transcript and
26   Mprezas' deposition transcript as confidential and attorney's eyes only, respectively, Armstrong also
     moves to compel the compliance of the Third-Parties based on the information revealed during the
27   depositions as the Third-Parties have exclusive possession of important knowledge related to claims
     and defenses in the Underlying Action.
28

these sons are, upon information and belief, Fernando Andres Garces Andrade (referred to here as "Andrade") and Fernando Eduardo Bedoy Garces (referred to here as "Bedoy"), though the ordering of the surnames of both men remains unclear to Armstrong and neither Opposer has provided clarity on this point. *See id.*

Indeed, Opposers and the Third-Parties have intentionally taken advantage of the overlapping of names between the two individuals and the ability to cause confusion, initially revealing that a "Fernando Garces" had discoverable information but never clarifying which one or whether both were involved. In particular, in its initial disclosures, Opposer Alxigna named Fernando Garces as one "individual likely to have discoverable information." Leventhal Decl., ¶ 21. Meanwhile, when asked about persons having knowledge of the HAIRKLYN mark, "Opposer Mprezas identifie[d] **Fernando Garces** based on his signing the **April 6, 2012** trademark application on behalf of OPMX, LLC in connection with HAIRKLYN (Reg. No. 4,241,962)." Leventhal Decl., ¶ 22, Ex. K. Notably, Opposer Alxigna's Initial Disclosures and Opposer Mprezas' Interrogatory Responses were served by counsel for Opposers, who also represents the Third-Parties.

In spite of Opposers identifying a "Fernando Garces" while providing no context on whether this referred to multiple people or a specific person, Andrade, through the Third-Parties' counsel, later served improper objections to the Subpoena of Fernando Garces. This would suggest Fernando Garces referred to ***Fernando*** Andres ***Garces*** Andrade when objections were served on Andrade's behalf, and when Andrade conceded "he was served with the Subpoena." Leventhal Decl., ¶ 24, Ex. Z. However, Andrade also "object[ed] that the Subpoena [] appears to be directed to a different person named 'Fernando Garces.'" *Id.* Andrade, through the Third-Parties' counsel, served the objections on July 27, 2023, without either Andrade or Opposers clarifying who "Fernando Garces" was before or since Andrade served those objections.

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

Meanwhile, immediately following the Opposers' Depositions when Armstrong found out that there was another person named "Fernando Garces" who was involved in running OPMX, Armstrong's counsel noticed and issued subpoenas of "Fernando Eduardo Garces Bedoy aka Fernando Eduardo Bedoy Garces aka Eduardo Bedoy."[2] *See* Leventhal Decl., ¶ 16, Ex. S. Furthermore, on August 1, 2023, Armstrong provided notice of subpoenas to testify and to produce documents (collectively, the "Bedoy Subpoenas") to Opposers through their counsel.[3] *See* Leventhal Decl., ¶ 16, Exs. S-T. On August 3, 2023, the Bedoy Subpoenas were served on Bedoy by a process server. *See* Leventhal Decl., ¶ 17, Ex. U. Notably, Opposers' counsel also represents Bedoy. Thus, the Bedoy Subpoenas were properly served. Yet, Bedoy never served formal objections. *See* Leventhal Decl., ¶ 20, Ex. T.

Opposers provided the name "Fernando Garces" knowing it could refer to two people, objected that one person, Andrade, is not Fernando Garces, but the name is "directed to a different person." Leventhal Decl. ¶ 24, Ex. Y. At the same time, the Third-Parties' counsel contended that Bedoy was subpoenaed for the first time on August 1, 2023, and thus was not the subject of the earlier subpoenas of Fernando Garces. *See* Leventhal Decl., ¶ 20, Ex. T. Thus, Opposers provided Armstrong an ambiguous name that could refer to two people, while also insisting that it refers to neither one. This tactic to skirt the rules of discovery must not be tolerated. Thus,

---

[2] The depositions also revealed that a party representative identified as Octavio Cazadero in initial disclosures is named Octavio ***Fernando Garces*** Cazadero. Leventhal Decl., ¶ 21, Ex. X. But for the fact that the names "Fernando Garces" and "Octavio Cazadero" appeared separately in the initial disclosures as if referring to two different people, Armstrong would also be concerned that "Fernando Garces" referred to not two, but three different people.

[3] Opposers ensured the existence of two relevant Fernando Garces was not made clear until the end of discovery. In particular, Opposers provided multiple excuses to push back the dates of the Opposer Depositions, during which Armstrong learned that two people named Fernando Garces were involved with OPMX and/or related third-parties. For example, Opposer Mprezas' deposition was moved back multiple times due to an allegedly conflicting doctor's appointment, due to counsel's preparation for a conference, and for a number of other reasons. *See, e.g.*, Leventhal Decl., ¶ 23. Armstrong accommodated all of these alleged scheduling conflicts.

7

1  Armstrong moves this court to compel Bedoy's compliance with the Bedoy Subpoenas,

2  in spite of his efforts to play a name game to avoid compliance.[4]

3  **II. DESPITE ARMSTRONG'S EFFORTS, THE THIRD-PARTIES HAVE**

4  **REFUSED TO MEANINGFULLY MEET AND CONFER REGARDING THE**

5  **SUBPOENAS.**

6      On June 28, 2023, the OPMX Subpoenas were issued to OPMX requesting

7  documents and attendance at a deposition on July 10, 2023 and July 24, 2023,

8  respectively. *See* Leventhal Decl., ¶ 11, Ex. M. Armstrong's counsel provided OPMX's

9  counsel service copies of the OPMX Subpoenas the same day. *See* Leventhal Decl., ¶

10  11, Ex. N. On June 30, 2023, Armstrong served on OPMX the OPMX Subpoenas by

11  delivering a true copy of the notices and subpoenas to OPMX's Authorized Agent at

12  its address as filed with the Delaware Secretary of State. *See* Leventhal Decl., ¶ 13, Ex.

13  O. On August 3, 2023, Armstrong also served OPMX at its address in California. *See*

14  Leventhal Decl., ¶ 13, Ex. P. On August 15, 2023, Armstrong served responses to

15  OPMX's objections and offered to meet-and-confer with OPMX's counsel on either

16  August 17, 2023 or August 18, 2023. *See* Leventhal Decl., ¶ 18, Ex. W. OPMX's

17  counsel willfully denied and ignored this request. *See* Leventhal Decl., ¶ 18, Exs. V-

18  W.

19      On July 19, 2023, OPMX's counsel explained that "third parties OPMX, J&M

20  and Farma Ahorro are standing on their written objections, so [Armstrong] should not

21  expect a witness to testify." Leventhal Decl., ¶ 15, Ex. N. OPMX did not file a motion

22  to quash or modify, nor did it file a motion for a protective order. *See* Leventhal Decl.,

23  ¶ 15. OPMX did not produce documents or attend its deposition as scheduled. *See id.*

24  After Armstrong served responses to OPMX's objections to the Subpoenas, on

25

26  _____

27  [4] While Fernando Andres Garces Andrade has also failed to comply with his subpoenas, as needed, Armstrong will move to compel in the Northern District of California, where Armstrong directed compliance based on his addresses of record.

28

8

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

Tuesday, August 15, 2023, OPMX's counsel refused Armstrong's offer to meet-and-confer on either Thursday, August 17, or Friday, August 18, 2023. *See* Leventhal Decl., ¶ 19, Ex. W. OPMX's counsel also willfully ignored Armstrong's offer to meet-and-confer later on Monday, August 21, 2023, instead responding on Tuesday, August 22, 2023, indicating that he was unavailable. *See id.* On August 23, 2023, OPMX's counsel again refused to meet-and-confer. *See id.* During the multiple times OPMX's counsel refused to meet-and-confer, his excuses for not doing so included "working on a brief in another matter," being "in deposition all day," having "very limited a[vaila]bility," being "largely unavailable," attending a deposition *the previous week*, and traveling *later in the week*. *Id.* Indeed, while Armstrong has continued to make counsel and co-counsel available to meet-and-confer, OPMX's counsel has used everyday tasks as an attorney as a basis to claim unavailability.

Further, to date, Bedoy has not served any formal objections to the Bedoy Subpoenas. *See* Leventhal Decl., ¶ 17. Bedoy did not produce documents or attend his deposition. *See* Leventhal Decl., ¶ 20. When Armstrong's counsel requested a meet-and-confer in an August 15, 2023 email to the Third-Parties' counsel including responses to the objections of other third-parties whom counsel represents, the Third-Parties' counsel refused to meet-and-confer on the Bedoy Subpoenas or the OPMX Subpoenas (collectively, the "Subpoenas"). *Id.* As recently as August 23, 2023, Bedoy's counsel concluded "I see no reason for a meet and confer regarding any purported subpoenas to Fernando Eduardo Garces Bedoy," citing various issues that were never raised in federal court or in formal objections. Leventhal Decl., ¶ 20, Ex. T.

## III. APPLICABLE LEGAL STANDARD

As for the OPMX Deposition Subpoena and the Bedoy Deposition Subpoena (collectively, the "Deposition Subpoenas"), "a deposition subpoena may only be challenged by moving to quash or modify the subpoena pursuant to Federal Rule of

9

1   Civil Procedure 45(c)(3)(A), or by moving for a protective order pursuant to Rule

2   26(c)." *Union Bank of California 401(k) Plan v. Hansen (In re Coan)*, No. C 06-80350

3   MISC SI, 2007 U.S. Dist. LEXIS 6288, at *6 (N.D. Cal. Jan. 12, 2007). Armstrong is

4   within its rights to file this motion to compel and the court has discretion to grant it.

5   *See id.* at *7 (citing *Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1519

6   (9th Cir. 1987)) ("The court has discretion to determine whether to grant a motion to

7   compel."). As for the OPMX Production Subpoena and the Bedoy Production

8   Subpoena (collectively, the "Production Subpoenas"), Federal Rule of Civil Procedure

9   34(c) states that "[a]s provided in Rule 45, a nonparty may be compelled to produce

10  documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c). "A

11  command in a subpoena to produce documents, electronically stored information, or

12  tangible things requires the responding person to permit inspection, copying, testing,

13  or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D). "The serving party may, at

14  any time, on notice to the commanded person, move the court for an order compelling

15  production. Fed. R. Civ. P. 45(d)(2)(B)(i)." *Greenspan v. County of San Diego*, Case

16  No. 13cv210-LAB (DHB), 2014 U.S. Dist. LEXIS 7393, at *4 (S.D. Cal. Jan. 9, 2014).

17      While the Underlying Action is pending in the TTAB, this Court retains the

18  power to compel compliance with the Subpoenas. *See Toni Brattin & Co. v. Mosaic

19  Int'l, LLC*, 2015 U.S. Dist. LEXIS 46756, at *6 (N.D. Cal. Apr. 9, 2015) ("while the

20  Trademark Trial and Appeal Board of the PTO lacks the authority to compel witnesses

21  through the subpoena power to appear for testimony, district courts have power to

22  enforce such subpoenas") (citations omitted); *see also Highbeam Mktg., LLC v.

23  Highbeam Research, LLC*, No. 91162372, 2008 TTAB LEXIS 2, at *13 (TTAB 2008)

24  ("Instead of defying the subpoena, [Objector] should have either complied fully

25  therewith … or sought to quash that subpoena *in the district court*.") (emphasis added).

26

27

28

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE
MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

1    Although it was the Third-Parties' responsibility to bring motions before this
2    court, Armstrong invokes Rule 34(c) and the Court's discretion to ask the Court to
3    compel compliance with the Subpoenas.

4    **IV. THE LIMITED DISCOVERY ARMSTRONG SEEKS FROM OPMX AND**
5    **BEDOY IS RELEVANT TO THE UNDERLYING ACTION**

6    Deposition testimony and documents from Third-Parties OPMX and Bedoy
7    related to the HAIRKLYN mark and their involvement with products and related
8    businesses is relevant and crucial when the trademarks in question have had three
9    different owners, several third-party companies involved with manufacturing,
10   distribution, and sales, and several individuals involved with the distribution,
11   marketing and sales of the products. Despite having requested such information over a
12   year ago in written discovery, and considering the efforts of the Opposers to prevent
13   and obfuscate the facts, Armstrong only learned of the full scope of the Third-Parties'
14   involved through the recent depositions. *See, e.g., In re Broiler Chicken Antitrust Litig.*,
15   No. 1:16-cv-08637, 2017 U.S. Dist. LEXIS 124459, at **21, 29 (N.D. Ill. Aug. 7, 2017)
16   (allowing discovery regarding the relationship between a party and third-parties when
17   the party only gradually revealed that others were involved). Further, it has become
18   clear that OPMX continues to serve as a distributor of the branded products at issue in
19   the Underlying Action. *See* Leventhal Decl., ¶ 9, Ex. K. Therefore, information on the
20   Third-Parties' use of the mark and connections with entities who may also manufacture
21   or distribute the products is within the scope of discovery and is relevant to the claims
22   and defenses in this proceeding.

23   Further, topics related to other trademark filings made by the Third-Parties and
24   Opposers are relevant to Armstrong's pleaded claim alleging that Opposers have a
25   pattern and practice of registering trademarks similar to well-known foreign marks in
26   the United States without the foreign owners' consent. *See generally*, *Walrus Brands,*
27   *LLC v. Peaches Uniforms, Inc.*, 2018 U.S. Dist. LEXIS 247617, at *31 (N.D. Ill. Apr.

28

11

23, 2018) (denying a motion *in limine* asking to prevent admission of evidence of other lawsuits in a trademark infringement case because the testimony could be used to impeach the defendant's owner and it was premature to decide on admissibility). Indeed, this Court may find the rationale of other federal courts persuasive, which have concluded that "[d]iscovery of other lawsuits is not a subject that is amenable to a per se rule. The Court must look to the relevance of the other suits to the particular claims at issue." *Thornton v. State Farm Mutual Auto Ins. Co.*, 2006 U.S. Dist. LEXIS 87845 *5 (N.D. Ohio 2006). When other parties similarly claim that Opposers seek to profit off of famous foreign marks, *see e.g.*, *Jarritos, Inc. v. Mprezas Inc.*, Proceeding No. 91273390, 1 TTABVUE, and Opposers produced documents showing the repeated transfer of several trademarks along with the HAIRKLYN mark, *see* Leventhal Decl., ¶¶ 6-7, the other suits are relevant to claims that Opposers fraudulently used the HAIRKLYN mark and have effectuated purported assignments to avoid detection and to undermine proper discovery.

**A. OPMX's Boilerplate Objections Did Not Satisfy its Duty to Comply with the Subpoenas.**

In response to the OPMX Subpoenas, OPMX served objections that were all without merit.

**First**, OPMX claimed that it was not served at the address listed on its California Statement of Information. *See* Leventhal Decl., ¶ 15, Ex. R. But service was, in fact, effectuated since OPMX is a Delaware entity and its agent was personally served in Delaware. *See* Leventhal Decl., ¶ 13, Ex. O. Nevertheless, a process server also served OPMX by delivering a true copy of the Subpoena to the address listed on OPMX's California Statement of Information. *See* Leventhal Decl., ¶ 13, Ex. P. Further, OPMX alleged that there was a lack of personal service of the OPMX Subpoenas. *See* Leventhal Decl., ¶ 15, Ex. R. But even though OPMX was personally served on its agent, merely delivering a copy of the Subpoena would have been sufficient under

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

Federal Rule of Civil Procedure 45. *See BNSF Ry. Co. v. Alere, Inc.*, No.: 18-CV-291-BEN-WVG, 2018 U.S. Dist. LEXIS 83559, at *11 (S.D. Cal. May 17, 2018) (citation omitted) ("Rule 45 does not require personal service"); *see also Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No.: 17CV1943 LAB (JMA), 2018 U.S. Dist. LEXIS 88523, at *11 (S.D. Cal. May 24, 2018) ("By listing this address as the location of its agent for service of process, [Objector] implicitly authorized [the building] to receive subpoenas on its behalf.").[5]

Even if it were true that OPMX was not properly served, which it is not, this did not absolve OPMX of its obligations to comply with the OPMX Subpoenas. OPMX was required to attend the deposition as scheduled absent a court order. *See, e.g.*, *In re Coan*, 2007 U.S. Dist. LEXIS 6288, at *6; *see also Hi.Q, Inc. v. Zeetogroup, LLC*, No.: 22cv1440-LL-MDD, 2022 U.S. Dist. LEXIS 215133, at *41 (S.D. Cal. Nov. 29, 2022) ("The Federal Rules of Civil Procedure do not permit [a third-party] to object to the subpoena for deposition testimony.") (citations omitted). OPMX was also required to produce documents by the date of compliance because it was not making "good faith efforts" to negotiate terms of compliance nor was it trying "to work something out without the Court's intervention." *Friedman v. Old Republic Home Protection Co., Inc.*, No. SACV 12-1833 AG (OPx), 2014 U.S. Dist. LEXIS 200887, at **5-6 (C.D. Cal. June 24, 2014) (citations omitted). When objections are insufficient to avoid

---

[5] OPMX's responses regarding the OPMX Subpoenas is additional evidence that OPMX was aware of the OPMX Subpoenas and that delivery was proper. *Chambers v. Whirlpool Corp.*, No. SA CV 11-1733 FMO (JCGx), 2016 U.S. Dist. LEXIS 193644, at *11 (C.D. Cal. Aug. 12, 2016) (considering counsel's email to objectors attaching the subpoena and objectors' responses discussing the subpoenas to conclude that "service was sufficient to ensure that the objectors had knowledge of and actually received the subpoenas"); *see also BNSF Ry. Co.*, 2018 U.S. Dist. LEXIS 83559, at *11 (considering counsel's insistence that a subpoena was required to conclude there was knowledge and thus delivery was proper).

---

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

1  compliance with a deposition subpoena and when OPMX has not tried "to work

2  something out" regarding the production subpoena, OPMX had an obligation to

3  comply with both subpoenas.

4       **Second**, OPMX relied on the parties' ongoing discussions on witness fees as a

5  justification for not attending the scheduled deposition and not producing documents.

6  *See* Leventhal Decl., ¶ 15, Exs. N & R. But OPMX was still obligated to comply with

7  the OPMX Subpoenas. In particular, a written promise to pay the fees may satisfy the

8  obligation to tender fees. *See Forbes v. Villa*, No. SACV 11-1330 JGB (ANx), 2013

9  U.S. Dist. LEXIS 199481, at *22, n. 6 (C.D. Cal. Dec. 3, 2013); *see also Highbeam*

10 *Mktg., LLC*, 2008 TTAB LEXIS 2, at **11-13 (imposing sanctions on counsel that

11 "prevented the deposition from proceeding by insisting on resolution of a fee dispute

12 prior to the deposition" because "[u]nless such subpoena was quashed, any fee dispute

13 could have been resolved in the district court that issued the subpoena *after* the taking

14 of the deposition…") (*emphasis added*). Armstrong's counsel twice explained that it

15 would provide witness fees once mileage was confirmed, but Armstrong never received

16 this information. *See* Leventhal Decl., ¶ 15, Ex. N. When Armstrong committed to

17 paying witness fees for the deposition and when Rule 45(b)(1) makes it clear that

18 witness fees do not apply for production subpoenas, OPMX had no excuse for not

19 complying with either subpoena.

20      **Third**, OPMX claimed that the OPMX Subpoenas did not allow a reasonable

21 time to comply. *See* Leventhal Decl., ¶ 15, Ex. R. But when the Deposition and

22 Production Subpoenas were delivered on June 30, 2023 and had dates of compliance

23 of July 10, 2023 and July 24, 2023 respectively, Armstrong provided the customary

24 time to comply. *Cf. Bonzani v. Shinseki*, No. 2:11-CV-00007-EFB, 2014 U.S. Dist.

25 LEXIS 77619, at *12 (E.D. Cal. June 4, 2014) ("Service of subpoenas at least 10 days

26 before the deposition or production is customary, but not mandatory.") (citation and

27 quotations omitted).

28

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE
MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

**Fourth**, OPMX claimed that the OPMX Subpoenas required the disclosure of privileged information. *See* Leventhal Decl., ¶ 15, Ex. R. But this did not absolve OPMX of its duty to comply when it provided no privilege log and no explanation of the basis on which it claimed a privilege. *See RetailMeNot, Inc. v. Honey Sci. Corp.* (*In re Subpoena to PayPal Holdings, Inc.*), No. 20-mc-80041-AGT, 2020 U.S. Dist. LEXIS 102530, at *11 (N.D. Cal. June 10, 2020) ("[T]he party resisting production of subpoenaed information on privilege grounds, has the burden of showing that the material withheld fits within the asserted privilege or protection.") (citations omitted); *see also In re Coan*, 2007 U.S. Dist. LEXIS 6288, at *16-*17 ("With respect to the Third Parties' privilege objection, where discovery requests are objected to because they seek privileged information, the objecting party must submit, with its objections, a privilege log identifying the nature of the document, and may submit affidavits regarding the document's confidential nature."); *see also* Rule 45(e)(2)(A)(ii).

**Fifth**, OPMX objected that the Subpoenas were burdensome and sought irrelevant information. *See* Leventhal Decl., ¶ 15, Ex. R. But OPMX could not make general claims of being burdened without providing details as to how. *See, e.g., In re Coan*, 2007 U.S. Dist. LEXIS 6288, at *15 (granting a motion to compel compliance with a subpoena and awarding sanctions when "[t]he Subpoenaed Third Parties did not identify how each discovery request is overly broad, burdensome, or oppressive….").

**Sixth**, OPMX insisted that it would not comply absent a motion to compel, which was improper. *See* Leventhal Decl., ¶ 15, Ex. R. "If a nonparty were simply able to serve objections to any subpoena and avoid compliance, there would be no need for a nonparty to quash or modify a subpoena. A nonparty could simply lodge an objection to any subpoena and wait for the subpoenaing party to file a motion to compel compliance." *Hi.Q, Inc.*, 2022 U.S. Dist. LEXIS 215133, at *14-*15 (citations and internal quotation marks omitted).

**Seventh**, OPMX made unsubstantiated arguments claiming the deposition and production topics were "vague," but still had to comply when it did not explain how so. *See* Leventhal Decl., ¶ 15, Ex. R; *see also Jang v. Sagicor Life Ins. Co.*, No. EDCV 17-1563 JGB (KKx), 2019 U.S. Dist. LEXIS 42737, at **8-9 (C.D. Cal. Jan. 25, 2019) ("Counsel offered no explanation or argument concerning why the subpoena was overbroad, burdensome, vague, ambiguous, and not reasonably specific. Thus, [the judge] had nothing from which to evaluate the merits of the objection.").

**Eighth**, OPMX purportedly reserved the right to file a motion to quash or modify the Subpoenas in this court, but OPMX forfeited this right. *See* Leventhal Decl., ¶ 15, Ex. R. OPMX's objection to the OPMX Deposition Subpoena was not enough to avoid compliance absent a court order. *See, e.g.*, *In re Coan*, 2007 U.S. Dist. LEXIS 6288, at *6. Further, OPMX's objections to the OPMX Production Subpoena were not enough when it was not engaged in good faith negotiations. *Cf. Friedman*, 2014 U.S. Dist. LEXIS 200887, at *6.

Because OPMX failed to file a motion to quash or modify the OPMX Deposition Subpoena and the OPMX Production Subpoena by July 24, 2023 and July 10, 2023 respectively, and instead unilaterally decided to "stand" on its objections, OPMX waived all of its objections to the OPMX Subpoenas. *See Handloser v. HCL America, Inc.*, 2020 U.S. Dist. LEXIS 145960, 2020 WL 4700989, at *4 (N.D. Cal. Aug. 13, 2020) ("Courts generally agree that a motion to quash under Rule 45 is timely if made *before the date specified for compliance* with the subpoena.") (emphasis added).

### B. Bedoy's Failure to Even Object Justifies an Order to Comply.

Bedoy forfeited any right to object to the Bedoy Subpoenas, and this Court should order compliance. "The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). The Bedoy Subpoenas had a date of compliance of August 10, 2023 and

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS

1  August 17, 2023, respectively. Because Bedoy did not object within 14-days or by the

2  dates of compliance, Bedoy waived all objections.

3  **IV. CONCLUSION**

4        Armstrong's subpoenas seek deposition testimony and targeted documents from

5  OPMX and Bedoy related to their involvement with the creation, distribution, or sale

6  of products bearing the HAIRKLYN mark and their connection to individuals and

7  businesses associated with the HAIRKLYN mark. This information is relevant to the

8  claims and defenses in the Underlying Action. Thus, the Court should grant

9  Armstrong's motion to compel and order OPMX and Bedoy to comply with the

10  Subpoenas.

11

12                                    Respectfully submitted,

13

  Dated:  August 29, 2023               DINSMORE & SHOHL LLP

14

15                                By:  _s/ Joseph S. Leventhal_

16                                  JOSEPH S. LEVENTHAL
                                Joseph.leventhal@dinsmore.com

17                                  Counsel for Applicant
                                ARMSTRONG LABORATORIOS

18                                  DE MEXICO S.A. DE C.V.

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE
MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS