JOSEPH S. LEVENTHAL (SBN 221043)
joseph.leventhal@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California 92101
Ph: 619-400-0500
Fx: 619-400-0501

Counsel for Applicant/Defendant
ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALXIGNA INC. and MPREZAS, INC., | Civil Action No. '23CV1584 BTM WVG |
| Opposers/Plaintiffs, | Trademark Trial and Appeal Board Proceeding No: 91235782 |
| v. | |
| ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V., | **DECLARATION IN SUPPORT OF MOTION OF ARMSTRONG LABORATORIOS DE MEXICO S.A. DE C.V. TO COMPEL COMPLIANCE WITH SUBPOENAS** |
| Applicant/Defendant | |
| | Date: TBD<br>Time: TBD<br>Place: TBD |

1.
DECLARATION OF JOSEPH LEVENTHAL ISO ARMSTRONG'S MOTION TO COMPEL

I, Joseph Leventhal, declare as follows:

1. I am a member of the State Bar of California and a partner in the law firm of Dinsmore & Shohl LLP, counsel of record to Armstrong Laboratorios de Mexico S.A. de C.V. ("Armstrong") in this action and in the action *Alxigna Inc. and Mprezas Inc. v. Armstrong Laboratorios de Mexico S.A. de C.V.*, Proceeding No. 91235782, pending before the Trademark Trial and Appeal Board. I respectfully submit this declaration in support of the motion to compel filed by Armstrong. I have personal knowledge of the following facts and, if called as a witness, could and would competently testify thereto.

2. The Underlying Action is based on Opposer Alxigna asserting that Armstrong's HERKLIN mark was likely to cause confusion with Opposers' HAIRKLYN mark. In response, Armstrong counterclaimed to cancel the HAIRKLYN registration based on evidence that OPMX and its purported successors had fraudulently offered products in the United States to misrepresent the source of the products and trade off of Armstrong's well-known mark by targeting U.S. consumers familiar with the HERKLIN brand, including consumers of Mexican descent. True and correct copies of Alxigna's filing and Armstrong's responses in the Trademark Trial and Appeal Board are attached hereto as **EXHIBIT A**.

3. A true and correct copy of Armstrong's registration for the HERKLIN word and design mark for "lice treatment preparation and products" is attached hereto as **EXHIBIT B** - U.S. Reg. No. 5541255. A true and correct copy of Armstrong's registration for the HERKLIN standard character mark for "lice treatment preparation and products" is attached hereto as **EXHIBIT C** - U.S. Reg. No. 5541254. A true and correct copy of Armstrong's application for the HERKLIN mark for "lice treatment combs" is attached hereto as **EXHIBIT D** - U.S. Serial No. 87233512.

4. A true and correct copy of OPMX's registration for the HAIRKLYN word mark is attached hereto as **EXHIBIT E** – U.S. Reg. No. 4241962.

5. OPMX claims to target Mexican people and people of Hispanic origin with Hispanic products, as detailed on OPMX's LinkedIn page. A true and correct copy of OPMX's Linkedin page is attached hereto as **EXHIBIT F**.

6. OPMX purportedly assigned its interests in the HAIRKLYN mark to Alxigna. A true and correct copy of the assignment agreement between OPMX and Alxigna is attached hereto as **EXHIBIT G**.

7. Alxigna purportedly assigned its interests in the HAIRKLYN mark to Mprezas. A true and correct copy of the assignment agreement between Alxigna and Mprezas is attached hereto as **EXHIBIT H**.

8. OPMX and its successors have been accused by other Mexican brands of fraudulently using their brands in the United States, with Jarritos, Inc. challenging Mprezas' application for the FRUTA-RITTOS mark. Jarritos, Inc.'s website explains that Jarritos was founded in 1950 and became a best-selling drink in Mexico in the 1960s before being exported to the United States in the 1980s. A true and correct copy of Jarritos' complaint against Mprezas in the Trademark Trial and Appeal Board ("TTAB" or the "Board") is attached hereto as **EXHIBIT I**. A true and correct copy of Jarritos' website is attached hereto as **EXHIBIT J**.

9. Although Mprezas is purportedly the current owner of the HAIRKLYN mark, it explained in its supplemental responses to Armstrong's First Set of Interrogatories that OPMX continues to serve as licensee of the HAIRKLYN mark and distributes products under the mark. A true and correct copy of Mprezas' Supplemental Responses to Armstrong's First Set of Interrogatories is attached hereto as **EXHIBIT K**. In particular, response number seven explains that OPMX distributes products under the HAIRKLYN mark as a current licensee.

10. In light of the confusion and the convoluted webs between the parties and the third-parties, the TTAB concluded in a June 2, 2023 order that third-party discovery from OPMX is not only relevant, but it is discoverable. *See* the Board's Order Dated July 2, 2023 attached hereto as **EXHIBIT L** ("Discovery is reopened for sixty days

3
DECLARATION OF JOSEPH LEVENTHAL ISO ARMSTRONG'S MOTION TO COMPEL

1  from the date of this order for Applicant only to take additional discovery, including
2  discovery from Alxinga or third parties (such as OPMX).").

3  11.  On June 28, 2023, two subpoenas were issued from the United States
4  District Court for the Southern District of California requesting that OPMX, LLC
5  ("OPMX") produce documents and testify at a deposition (the "OPMX Subpoenas"). I
6  issued and signed both subpoenas as an attorney authorized to practice in the Southern
7  District of California pursuant to Federal Rule of Civil Procedure 45(a)(3). A true and
8  correct copy of the subpoenas are attached hereto as **EXHIBIT M**. The same day,
9  Armstrong provided notice of the OPMX Subpoenas to Opposers through their
10 counsel, who now serves as counsel to both OPMX and Bedoy, as well. A true and
11 correct copy of the e-mail serving notice of the OPMX Subpoenas on counsel and the
12 subsequent exchanges is attached hereto as **EXHIBIT N**.

13 12.  On June 29, 2023, OPMX's counsel expressed concerns without formally
14 serving objections, demanding that Armstrong's counsel "explain what information [it]
15 expect[ed] to obtain from these third parties that [it] ha[d] not obtained from Mprezas."
16 *Id.* On July 5, 2023, Armstrong's counsel explained that "[Armstrong] ha[d] not
17 received several categories of information or documents that [Armstrong] requested
18 from Mprezas or Alxigna." *Id.*

19 13.  On June 30, 2023, the OPMX Subpoenas were served on OPMX, by a
20 process server, on its corporate agent in Delaware. Attached hereto as **EXHIBIT O** is
21 a true and correct copy of the affidavits of service on OPMX. On August 3, 2023, the
22 OPMX Subpoenas were again served on OPMX by a process server at the address
23 listed with the California Secretary of State. Attached hereto as **EXHIBIT P** is a true
24 and correct copy of the proof of service on OPMX for the August 3, 2023 service.

25 14.  On July 13, 2023, after weeks of discussion following Armstrong's
26 delivery to OPMX's counsel of copies of the OPMX Subpoenas (and other third-party
27 subpoenas), counsel stated that "as for third party OPMX, LLC, I have not been
28 contacted to represent it with respect to any subpoena served." Exhibit N. Yet, in the

same exchange, counsel requested "a copy of the proof of service of any subpoena served" on OMPX, a request it also made for each of the other third-parties of which it confirmed its representation. *Id.*

15. The very next day (July 14, 2023) and without providing any update on the status of representation, OMPX's counsel provided service copies of OPMX's written objections to both OPMX Subpoenas. A true and correct copy of OPMX's counsel's email serving its objections is attached hereto as **EXHIBIT Q**. A true and correct copy of OPMX's objections is attached hereto as **EXHIBIT R**. Only once Armstrong's counsel requested clarity on the status of OPMX's representation, OPMX's counsel explained that it "represent[ed] third party OPMX as set forth in its written objections." Exhibit N. On July 19, 2023, OPMX's counsel explained that "third parties OPMX, J&M and Farma Ahorro are standing on their written objections, so [Armstrong] should not expect a witness to testify." *Id.* The back and forth included OPMX's counsel's repeated invocation of objections based on issues like witness fees, while Armstrong's counsel committed to paying these fees once OPMX provided mileage and Armstrong's counsel worked to address other issues raised by OPMX and to potentially accommodate its witness' schedule. OPMX did not file a motion to quash or modify, nor did it file a motion for a protective order. OPMX did not produce documents or attend its deposition as scheduled.

16. On August 1, 2023, two subpoenas were issued from the United States District Court for the Southern District of California requesting that Fernando Eduardo Bedoy Garces aka Fernando Eduardo Garces Bedoy aka Eduardo Bedoy ("Bedoy") produce documents and testify at a deposition (the "Bedoy Subpoenas"). I issued and signed both subpoenas as an attorney authorized to practice in the Southern District of California pursuant to Federal Rule of Civil Procedure 45(a)(3). A true and correct copy of the Bedoy Subpoenas are attached hereto as **EXHIBIT S**. A true and correct copy of the e-mail serving notice of the Bedoy Subpoenas on counsel and the subsequent exchanges is attached hereto as **EXHIBIT T**. The Bedoy Subpoenas were

issued and served on counsel immediately following depositions of the parties, which concluded on July 31 2023, during which Armstrong's counsel learned that Fernando Garces could refer to ***Fernando*** Eduardo ***Garces*** Bedoy. The deposition transcripts remain attorney's eyes only, an over-designation insisted upon by Opposers' counsel (same as Bedoy's counsel).

17. On August 3, 2023, the Bedoy Subpoenas were served on Bedoy by a process server. Attached hereto as **EXHIBIT U** is a true and correct copy of the affidavit of service on Bedoy. Bedoy did not serve responses or objections to Armstrong's subpoenas.

18. Armstrong served responses to OPMX's objections on August 15, 2023. A true and correct copy of Armstrong's responses are attached hereto as **EXHIBIT V**; a true and correct copy of the email exchanges regarding the responses are attached hereto as **EXHIBIT W**.

19. On August 16, 2023, OPMX's counsel refused Armstrong's offer to meet-and-confer on either Thursday, August 17, or Friday, August 18, 2023. *See* Exhibit W. On August 18, 2023, Armstrong's counsel offered to meet-and-confer with OPMX's counsel at a later date on August 21, 2023. *Id.* OPMX's counsel did not respond to the offer to meet-and-confer until August 22, 2023, when OPMX's counsel said he was unavailable. *Id.* On August 23, 2023, OPMX's counsel again refused to meet-and-confer. *Id.*

20. On August 16, 2023, without serving any formal objections, Bedoy, through his counsel, corresponded with Armstrong's counsel asking if Armstrong had withdrawn the Bedoy Subpoenas. Exhibit T. In his email, Bedoy's counsel referenced an August 2, 2023 email where he cited the August 1, 2023 discovery cut-off in response to Armstrong's counsel's service of the Bedoy Subpoenas, in spite of the subpoenas being issued before the close of the discovery and in spite of a pending Trademark Trial and Appeal Board motion to extend the discovery period. *See id.* On August 18, 2023, Armstrong's counsel responded explaining any issues should have

DECLARATION OF JOSEPH LEVENTHAL ISO ARMSTRONG'S MOTION TO COMPEL

been raised in served objections, pursuant to Federal Rule of Civil Procedure 45(d)(2)(b), and in federal court. *Id.* In the same exchange, Armstrong's counsel also offered to meet-and-confer on August 21, 2023. *Id.* On August 22, 2023, Bedoy's counsel willfully refused to meet-and-confer, repeating issues that Bedoy never raised in served objections or a motion before a court, and citing vague conflicts. *Id.* On August 22, 2023, Armstrong's counsel again offered to meet-and-confer at a date in which Bedoy's counsel did not initially indicate that he had any conflicts. *Id.* On August 23, 2023, Bedoy's counsel again willfully refused to meet-and-confer and stated "I see no reason for a meet-and-confer regarding any purported subpoenas to Fernando Eduardo Garces Bedoy." *Id.* Bedoy did not attend the deposition or produce documents.

21. The confusion regarding service of Bedoy under the name Fernando Eduardo Garces Bedoy or a derivative stemmed from Opposer Alxigna's use of the name "Fernando Garces" in its Initial Disclosures, without mention that three related individuals had Fernando Garces in their names: Octavio **Fernando Garces** Cazadero, **Fernando** Andres **Garces** Andrade, and **Fernando** Eduardo **Garces** Bedoy. The exact ordering of these men's names remain unclear to Armstrong, and Opposers and Bedoy have done nothing to rectify the confusion. A true and correct copy of Alxigna's Initial Disclosures are hereto attached as **EXHIBIT X**. Notably, Alxigna named Fernando Garces as one "individual likely to have discoverable information." *See* Exhibit X - Alxigna Initial Disclosures, p. 2, ¶ 21 (identifying Fernando Garces as the person responsible for the "[t]rademark application for HAIRKLYN (SN 85590785) filed by OPMX, LLC on 4/5/2012").

22. Meanwhile, Opposer Mprezas further contributed to the confusion by identifying Fernando Garces as a person with knowledge of the HAIRKLYN mark in its discovery responses. *See* Exhibit K, Resp. No. 6 ("Opposer Mprezas identifies **Fernando Garces** based on his signing the **April 6, 2012** trademark application on behalf of OPMX, LLC in connection with HAIRKLYN (Reg. No. 4,241,962).")

7
DECLARATION OF JOSEPH LEVENTHAL ISO ARMSTRONG'S MOTION TO COMPEL

(emphasis in original). Opposer Mprezas also did not reveal that "Fernando Garces" could refer to multiple related individuals. *See id.* While Armstrong has learned that "Fernando Garces" could even refer to **three** different related parties, because the names Fernando Garces and Octavio Cazadero were listed next to each other on Alxigna's Initial Disclosures, Armstrong has concluded Fernando Garces is not used to refer to Octavio ***Fernando Garces*** Cazadero. *See* Exhibit X. Thus, Armstrong treats the name as referring to either ***Fernando*** Andres ***Garces*** Andrade or ***Fernando*** Eduardo ***Garces*** Bedoy.

23. The existence of Bedoy was discovered during party depositions on July 27, July 28, and July 31, 2023. The deposition transcripts remain attorney's eyes only. The depositions were pushed back to the last days of discovery based on excuses from Opposers' counsel. For example, Opposer Mprezas' deposition was moved back multiple times due to an allegedly conflicting doctor's appointment, due to counsel's preparation for a conference, and for a number of other reasons.

24. As for Andrade, he conceded that he was served the Fernando Garces Subpoenas, but also argued in his objections to the Fernando Garces Subpoena that "Fernando Garces" referred to someone else. A true and correct copy of the Fernando Garces Subpoenas is attached hereto as **EXHIBIT Y**. A true and correct copy of the Andrade objections to the Fernando Garces Subpoenas are attached hereto as **EXHIBIT Z**. In his objections, Andrade stated that "he was served with the Subpoena." Exhibit Y - Fernando Andres Garces Andrade Objections to Subpoena, Objection No. 4, p. 2, ¶¶ 22-27. Yet, Andrade "object[ed] that the Subpoena [] appears to be directed to a different person named 'Fernando Garces.'" *Id.* at Objection No. 1, p. 1, ¶¶ 5-6.

25. While the Opposers' Depositions made it increasingly clear that OPMX and Bedoy have relevant information and the TTAB ordered discovery on the third-parties, both OPMX and Bedoy refuse to comply with their respective subpoenas or to even discuss terms of compliance. In contrast, Armstrong stands ready to accommodate

potential witness' schedules and to otherwise discuss potential terms of compliance. Further, although many of OPMX's and Bedoy's counsel's arguments are based on alleging an August 1, 2023 discovery cut-off, *see, e.g.*, Exhibit T, it is noteworthy that there is a pending motion before the TTAB to extend the discovery period in light of these issues. A true and correct copy of the Motion to Extend is attached hereto as **EXHIBIT AA**. Further, the TTAB has suspended the proceedings pending disposition of the motion, except the suspension "does not toll the time for either party to respond to any outstanding discovery…." A true and correct copy of the TTAB's order suspending the proceedings, except for discovery issues, is attached hereto as **EXHIBIT AB**. Furthermore, Armstrong made the TTAB aware of its unsuccessful efforts to meet-and-confer and of additional evidence that supports extending the discovery period in its Reply in Support of its Motion to Extend the Discovery Period filed on August 28, 2023. A true and correct copy of Armstrong's Reply in Support of its Motion to Extend the Discovery Period is attached hereto as **EXHIBIT AC**.

26. Armstrong was unable to secure the participation of either OPMX or Bedoy in a meet-and-confer prior to filing this action in the Southern District of California. *See* Exhibits N, T, and W.

Respectfully submitted,

Dated:  August 29, 2023

DINSMORE & SHOHL LLP

By: *s/ Joseph S. Leventhal*
JOSEPH S. LEVENTHAL
Joseph.leventhal@dinsmore.com
Counsel for Applicant
ARMSTRONG LABORATORIOS
DE MEXICO S.A. DE C.V.